## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

SEAN McENROE,

    Plaintiff

V.

MANTISSA CORPORATION,

    Defendant.

Civil Action No. 14-cv-12320

**COMPLAINT AND DEMAND
FOR TRIAL BY JURY**

Plaintiff, Sean McEnroe ("McEnroe" or "Plaintiff"), brings this action against Defendant, Mantissa Corporation ("Mantissa" or "Defendant"), for copyright infringement in violation of 17 U.S.C. § 101 *et seq.*  By this Complaint, McEnroe seeks, *inter alia*, injunctive relief, monetary damages, and attorney's fees under 17 U.S.C. §§ 106, 501, 502, 504 and 505, and alleges as follows:

### THE PARTIES

1.    Plaintiff is an individual currently residing in Maine.  During the majority of the time referenced in this Complaint, Plaintiff resided in Ashland, Wellesley and Northborough Massachusetts.  Plaintiff is the owner of two copyright registrations for the PACE Automated Tilt Tray Control Software ("PACE"):  **(1)** U.S. Copyright Registration No. TX0003189501, registered on September 20, 1991 entitled "IOCP driver;" and **(2)** U.S. Copyright Registration No. TX 7-800-102, registered on February 19, 2014 entitled "IOCP Driver 2.0."  The copyrights shall be referred to individually as the "1991 Copyright" and the "2014 Copyright," and collectively as the "McEnroe Copyrights."

{00014925.DOC}

2.      Upon information and belief, Defendant is a North Carolina corporation with a principal place of business located at 61 Pressley Road, Charlotte, North Carolina 28217.

## JURISDICTION AND VENUE

3.      This is a civil action seeking damages and injunctive relief for copyright infringement under the Copyright Act of the United States, 17 U.S.C. § 101 *et seq*.

4.      This Court has original and exclusive jurisdiction over the subject matter of this Complaint pursuant to 28 U.S.C. §§ 1331 and 1338(a).

5.      Plaintiff is informed and believes that this Court may properly exercise *in personam* jurisdiction over the Defendant because the Defendant regularly conducts business in the Commonwealth of Massachusetts and has sufficient minimum contacts with Massachusetts.

6.      Venue is proper in this District under 28 U.S.C. §§ 1391(b) and (c), and/or § 1400(a).

## THE ASSERTED COPYRIGHTS

7.      U.S. Copyright Registration No. TX0003189501, registered on September 20, 1991 and entitled "IOCP driver." (the "1991 Copyright") is owned by Plaintiff.  A true and correct copy of the 1991 Copyright is attached hereto as Exhibit A.

8.      U.S. Copyright Registration No. TX 7-800-102, registered on February 19, 2014 and entitled "IOCP Driver 2.0" is owned by Plaintiff (the "2014 Copyright").  A true and correct copy of the 2014 Copyright is attached hereto as Exhibit B.

## BACKGROUND FACTS

9.      From 1990 through 1991, Plaintiff authored source code for a software program called PACE Automated Tilt Tray Control Software, which includes input and output connection port drivers ("IOCP") as well as other software files (the "PACE Software").  Plaintiff filed for and received the 1991 Copyright.

10.     Tilt tray sorters are complex machines used in large warehouses to automatically schedule, sort and transport individual packages within the warehouse.  The tilt tray sorter moves items from one place in the warehouse to another utilizing a series of chutes.  When a package reaches the tilt tray sorter, it is tipped down a particular chute directed to the proper location within the warehouse.

11.     The PACE Software provides a communication system between a customer's Warehouse Control System ("WCS") and the tilt tray sorter that can be monitored and directed in real time.  The PACE Software utilizes bar codes, unique identifiers for each package, and a messaging language that allow the WCS and the warehouse personnel to quickly and accurately send and track over 100,000 items per day to specific locations within the warehouse.

12.     The messaging language generated by the PACE Software is displayed to the end user through a Customer Messaging Interface ("CMI").  The CMI consists of transaction codes displayed on a computer monitor, that are either generated by the PACE Software or input by the end user.  A transaction code is an abbreviated representation of a shortcut to the execution of a particular transaction.

13.     When a package is introduced into the tilt tray system, the PACE Software assigns the package a unique identifier and generates a transaction code.  The transaction code is then transmitted to the WCS and displayed on the CMI.  The WCS will then transmit a transaction code to the sorter that will direct the tray to tip the package onto a particular chute. Additional transaction codes linked to the unique identifier are generated each time the package is tipped from a tray down a chute, and also when the item reaches its final destination.  The transaction code sequence or volley shows, in detail, the journey a package takes while traveling through the tilt tray system.

14.     On occasion, a tip error will occur due to a broken tray, broken tipper or other malfunction.  When that occurs, the PACE Software will generate a transaction code indicating the error, and will transmit an error transaction code to the WCS, which will be viewed by the end user on the CMI.   The end user can then troubleshoot the tip error as soon as it occurs.  The ability to immediately diagnose tilt tray errors increases the reliability of the sorters, reducing errors and identifying mechanical malfunctions with the tilt trays and chutes.

15.     Transaction codes are a major part of the PACE Software design, and are protected by the McEnroe Copyrights.

16.     On July 15, 1991, Plaintiff through his wholly owned corporation, Lan Engineering, licensed to Bob Lavin, through Mr. Lavin's wholly owned corporation, Penguin Systems Ltd. ("Penguin"), the right to "make, sell and distribute" the PACE Software.  A true and correct copy of the Lan/Penguin Agreement is attached hereto as Exhibit C.

17.     On September 12, 1991, Plaintiff and Penguin entered into a Confidentiality Agreement with Mantissa, and disclosed the PACE Software.  The purpose of the Confidentiality Agreement was for Mantissa to determine whether to implement the PACE Software as a control system for its tilt tray sorters.  A true and correct copy of the Confidentiality Agreement is attached hereto as Exhibit D.

18.     Between 1991 and 1998, Plaintiff worked with Defendant and Penguin to install tilt tray sorter systems with the PACE Software in multiple locations, including but not limited to Addidas, New Balance, Phillips Van Huesen and Cardinal Health.  Plaintiff and Penguin installed the PACE Software, integrated the software with each WCS, and trained the warehouse

personnel to understand and use the PACE Software transaction codes, including the tip error messages.  The PACE Software source code was always provided to Defendant as a requirement for customer support issues.

19.     On a cumulative basis, Plaintiff would add transaction codes to the PACE Software when he encountered new configurations at each warehouse.  Plaintiff filed for and received the 2014 Copyright for the PACE Software that includes the additional transaction codes.

20.     As a result of superior tilt tray equipment and the PACE Software, Defendant became one of the most successful sellers of warehouse equipment in the United States.  Plaintiff sold a license for use of the PACE Software for each tilt tray sorter sold by Defendant.  Each license was specific to the individual tilt tray sorter, and could not be transferred to another tilt tray sorter or used for another purpose.  At all times, Plaintiff owned the copyrights to the PACE Software.

21.     In early 1998, Defendant requested that Plaintiff adapt his PACE Software for use with updated hardware, in particular, a Siemens Profibus controller card.  The change required new input/output device driver software written using the Profibus protocol, which is a popular European manufacturing communication standard for input/output control (the "Profibus Driver").  The Profibus Driver is the interface between the PACE Software and the tilt tray hardware.  Defendant wanted the Profibus Driver to replace the IOCP Driver for all new Mantissa sorters.

22.     Plaintiff developed and authored a Profibus Driver software program, and replaced the IOCP driver software program within the PACE Software.  The sorter control

component of the PACE Software remained unchanged.  It incorporated the same messaging

system, CMI and transaction codes.

23.     Plaintiff provided copies of the PACE/Profibus Software to Mantissa for testing at

its corporate headquarters in Charlotte, North Carolina, and was demonstrated successfully.

Plaintiff advised Defendant to adopt the new PACE/Profibus Software for use with its tilt tray

sorters.

24.     In response, Mantissa informed Plaintiff that it had independently developed its

own sorter control software solution.  After 1998, Defendant allegedly stopped using the original

PACE Software and declined to adopt the PACE/Profibus Software.

25.     According to the terms of the end user PACE Software License, once a different

software control system was installed on a tilt tray sorter, the end user PACE Software License

would automatically expire.  If Defendant wanted to continue using any portion of the PACE

Software, including the CMI and transaction codes, Defendant or its customer would be required

to purchase a new license from Plaintiff.

26.     Following 1998, Plaintiff had very little contact with Mantissa and none with its

customers. On several occasions, Plaintiff attempted to contact Bob Lavin by phone at his home

and at Mantissa to explore new opportunities to license his software.  Mr. Lavin failed to return

Plaintiff's phone calls.  At no time did Plaintiff have access to the new Mantissa sorter control

software.

27.     In December of 2012, Plaintiff learned, for the first time, that Mantissa had not

independently developed its sorter control software.  At minimum, Defendant had copied

Plaintiff's PACE Software CMI and transaction codes into the new sorter control software, and

continued using it with existing customers, and selling it to new customers.

28.     Defendant did not inform Plaintiff that it was using and selling any portion of the PACE Software, and did not pay any license fee to Plaintiff after 1998.

29.     Defendant is believed to be infringing, both literally and non-literally, upon Plaintiff's Copyrights.

30.     Plaintiff gave written notice of infringement to Defendant by letter dated December 22, 2012.  A true and correct copy of the letter is attached hereto as Exhibit E.

31.     On April 26, 2013, Defendant replied, stating that Plaintiff's source code "was in no way consulted, much less copied, replicated, or adopted," and that to do so would have been "wrong" and "unethical."  A true and correct copy of the letter is attached hereto as Exhibit F.

32.     Despite Defendant's denial of any copyright infringement, Plaintiff has discovered that Defendant has been using the exact same transaction codes with its automated tilt tray control software.

33.     Upon information and belief, Defendant continues to infringe upon Plaintiff's Copyrights by copying and selling the PACE Software CMI and transaction codes.

34.     As a direct and proximate result of Defendant's acts of infringement, the Plaintiff has suffered damages.

35.     As a direct and proximate result of Defendant's acts of infringement, the Plaintiff has suffered and continues to suffer irreparable harm for which there is no adequate remedy at law.

## COUNT ONE
(Infringement of the 1991 Copyright – 17 U.S.C. §§ 106 and 501)

36.     The Plaintiff incorporates the previous paragraphs of this Complaint by reference and realleges them as originally and fully set forth herein.

37.     Defendant has knowingly and intentionally infringed, and continues to infringe, the 1991 Copyright and will continue to do so unless enjoined by this Court.

38.     As a direct and proximate consequence of the Defendant's infringing acts, the Plaintiff has suffered and will continue to suffer injury and damages, and unless such acts and practices are enjoined by the Court, will continue to be injured in its business and property rights, and will suffer and continue to suffer injury and damages which are causing irreparable harm and for which Plaintiff is entitled to relief.

39.     Upon information and belief, the aforementioned infringement is knowing, intentional and willful.

## COUNT TWO

(Infringement of the 2014 Copyright – 17 U.S.C. §§ 106 and 501)

40.     The Plaintiff incorporates the previous paragraphs of this Complaint by reference and realleges them as originally and fully set forth herein.

41.     Defendant has knowingly and intentionally infringed, and continues to infringe, the 2014 Copyright, and will continue to do so unless enjoined by this Court.

42.     As a direct and proximate consequence of the Defendant's infringing acts, the Plaintiff has suffered and will continue to suffer injury and damages, and unless such acts and practices are enjoined by the Court, will continue to be injured in its business and property rights, and will suffer and continue to suffer injury and damages which are causing irreparable harm and for which Plaintiff is entitled to relief.

43.     Upon information and belief, the aforementioned infringement is knowing, intentional and willful.

**WHEREFORE**, Plaintiff Sean McEnroe respectfully requests that this Court enter judgment in his favor and against Defendant Mantissa Corporation, and requests relief as follows:

A.      Judgment be entered in his favor and against Defendant on each count of the Complaint;

B.      Declaring that Defendant has infringed the 1991 Copyright;

C.      Declaring that the foregoing infringement was willful and knowing;

D.      Declaring that Defendant has infringed the 2014 Copyright;

E.      Declaring that the foregoing infringement was willful and knowing;

F.      Entry of a preliminary and thereafter permanent injunction prohibiting the Defendant, and its agents, servants and employees, and all persons acting in concert with, or for them from continuing to reproduce, distribute, display, disseminate, transmit, make available for download or otherwise use the PACE Automated Tilt Tray Control Software in any manner whatsoever appropriating or in violation of the McEnroe Copyrights;

G.      Award Plaintiff his actual damages and Defendant's additional profits in an amount to be determined at trial;

H.      Award Plaintiff prejudgment interest;

I.      Award Plaintiff his costs, attorney's fees and expenses arising from this suit;

J.      Grant Plaintiff such other relief as this Court deems just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all counts of his Complaint so triable.


SEAN McENROE,

By his attorneys,


/s/ John T. McInnes

John T. McInnes, Esq.
BBO # 657488
Jodi-Ann McLane
BBO # 635567
Dingman, McInnes & McLane, LLP
114 Worcester Road, Suite 108
Westborough, MA  01581
Phone: (508) 938-1567
Fax:    (508) 898-9498

Dated: May 29, 2014